UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VARNER HARRIS, Jr.,

        Petitioner,

-vs-

NORMAN R. BEZIO, Superintendent,

        Respondent.
_____

**DECISION AND ORDER**
**No. 11-CV-0360(MAT)**

## I. Introduction

Pro se petitioner Varner Harris, Jr. ("Harris" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his detention in Respondent's custody. Harris is incarcerated as the result of a judgment of conviction entered against him in Erie County Court of New York State following his guilty plea to charges of first degree murder and attempted first degree murder in connection with the shooting of two police officers, one of whom was left permanently disabled.

## II. Factual Background and Procedural History

Harris was charged on January 11, 2007, in an eleven-count indictment with two counts of attempted aggravated murder (N.Y. Penal Law ("P.L.") §§ 110.00/125.26(a)(i)); four counts of attempted first degree murder (P.L. §§ 110.00/125.27(a)(i), (a)(vii)); and one count each of aggravated assault on a police officer (P.L. § 120.11); first degree assault (P.L. § 120.10(1));

attempted aggravated assault on a police officer (P.L. § 110.00/120.11); second degree assault (P.L. § 120.05(2)); and second degree criminal possession of a weapon (P.L. § 265.03(3)).

Following a Huntley[1] hearing held in Erie County Supreme Court (Wolfgang, J.), Petitioner's motion to suppress his statements to the police was denied. Due to Petitioner's extensive history of mental illness, three psychiatrists examined him to evaluate his competency to participate in his own defense. The opinions of the psychiatric experts were unanimous that Petitioner was not mentally incompetent.

On September 17, 2007, Petitioner elected to plead guilty to two counts of attempted first degree murder (counts three and four of the indictment). The trial court committed to sentencing Petitioner to an aggregate term of 30 years to life, and on November 19, 2007, Petitioner was sentenced accordingly.

On appeal to the Appellate Division, Fourth Department, of New York State Supreme Court, Petitioner argued that his waiver of appellate rights was invalid; the trial court erroneously refused to suppress his statements to the police; and the sentences were unduly harsh and severe and should be modified in the interests of the justice. The Appellate Division unanimously affirmed the conviction on April 30, 2010. People v. Harris, 72 A.D.3d 1624, 899 N.Y.S.2d 686 (4th Dept. 2010). The New York Court of Appeals denied

---

[1] People v. Huntley, 15 N.Y.2d 72 (1965).

leave to appeal on July 8, 2010. People v. Harris, 15 N.Y.3d 774 (2010).

This timely habeas petition followed in which Petitioner raises the following grounds for habeas relief: (1) his waiver of appellate rights was invalid; (2) his guilty plea was involuntary; (3) his statements to the police were involuntary; (4) his Fourth Amendment right to be free from unreasonable searches and seizures was violated; and (5) the trial court abused its discretion in sentencing.

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed.

**III. Discussion**

    **A.   Ground One: Invalid Waiver of Appellate Rights**

Petitioner argues, as he did on direct appeal, that because he did not specifically allocute to the terms of the waiver of appellate rights, the waiver was invalid and review of his Miranda[2] and sentencing claims was permitted. The Appellate Division only tangentially referred to this claim, assuming without deciding that Petitioner's waiver of the right to appeal was not knowingly, voluntarily and intelligently entered under state law. People v. Harris, 72 A.D.3d at 1624 (citing People v. Lopez, 6 N.Y.3d 248, 256-57 (2006) ("[W]e conclude that the record does not demonstrate

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

-3-

that defendant understood she was relinquishing a known right and that her waiver was thus invalid. During the colloquy, the trial court explained to defendant that 'when you plead guilty you waive your right of appeal.' This misleading statement, when accompanied by nothing other than defendant's one-word response to the question whether she understood the conditions of her plea, is not sufficient to guarantee that defendant understood the valued right she was relinquishing. Because her appeal waiver was invalid, defendant is thus entitled to review of whether her sentence was excessive.")).

Petitioner is correct that as a matter of New York state law, the record "must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty. . . ." People v. Lopez, 6 N.Y.3d at 256; see also id. at 256-57 ("Forfeiture of certain claims occurs by operation of law as a consequence of a guilty plea, with respect to issues that do not survive the plea. Waiver, on the other hand, occurs when a defendant intentionally and voluntarily relinquishes or abandons a known right that would otherwise survive a guilty plea[.]") (citation omitted). However, federal habeas relief is not available to redress mere errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted).

Harris has not cited, nor is the Court aware of, any Federal precedent standing for the proposition that the trial court must employ specific language when apprising a defendant pleading guilty of the individual rights relinquished. Accordingly, Harris has not set forth an error of constitutional magnitude redressable in this habeas proceeding. Accord, e.g., Salaam v. Giambruno, 559 F. Supp.2d 292, 298 (W.D.N.Y. 2008) (finding petitioner's claim that his waiver of appellate rights was invalid because the trial court "did not ask petitioner to explain in his own words his understanding of what this waiver meant" did not state a basis for habeas relief); Nicholas v. Smith, No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24, 2007) ("[W]hile petitioner's argument that the appeal waiver was invalid may have some basis in New York law, petitioner has not demonstrated that the enforcement of the waiver denied him of any rights under the federal Constitution[.]").

**B.     Ground Two: Harsh and Excessive Sentence**

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being

within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

As he did on direct appeal, Petitioner challenges the length of his sentence based upon his "mental history of disability's [sic] and disorders" and his age (eighteen-years-old) at the time of the shooting. The concurrent sentences of 30 years to life imposed upon Petitioner were part of a negotiated plea agreement. As the prosecutor explained, if Petitioner proceeded to trial on the two counts to which he was pleading guilty, he faced maximum sentences, by operation of law, of 50 years to life on each count. See Transcript of Plea Hearing at 3. Not only were the sentences imposed within the applicable statutory range, they were considerably less than the sentences Petitioner could have received had he been convicted of two counts of attempted first degree murder. In sum, Harris's challenge to the length of his sentence does not present a cognizable constitutional issue because the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opn.).

**C. Ground Three: Denial of the Privilege Against Self-Incrimination During the Police Interrogation**

Petitioner contends that his waiver of rights under <u>Miranda v. Arizona</u>, 384 U.S. 436, <u>supra</u>, was invalid because he was only eighteen-years-old, was handcuffed during the interrogation, he did not have an attorney present with him, and he was visibly exhausted. Following a <u>Huntley</u> hearing, the trial court issued a decision and order on May 11, 2007, making findings of fact and conclusions of law.

The Appellate Division then considered the <u>Miranda</u> claim on the merits and concluded that the trial court properly determined that the prosecution met its initial burden of establishing the legality of the police conduct and Petitioner's waiver of rights. The Appellate Division further found that Petitioner failed to establish that he did not waive his <u>Miranda</u> rights, or that the waiver was not knowing, voluntary and intelligent. <u>People v. Harris</u>, 72 A.D.3d at 1624 (quotation omitted).

In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from

pursuing those constitutional claims in a federal habeas corpus proceeding." Lefkowitz v. Newsome, 420 U.S. 283, 293 (1975). Pursuant to New York Criminal Procedure Law ("C.P.L.") § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite conviction upon guilty plea. See United States ex rel. Sanney v. Montanye, 500 F.2d 411, 414 (2d Cir. 1974) (holding habeas petitioner did not waive constitutional claims arising from "illegal interrogation," including claim challenging admissibility of statements made without Miranda warnings, because of guilty plea), cert. denied, 419 U.S. 1027 (1974). Harris, having sought to suppress his statements to the police prior to pleading guilty, has not waived his right to challenge the admissibility of those statements through a habeas corpus petition. E.g., Perez v. Ercole, No. 09 Civ. 2180(WHP)(KNF), 2010 WL 2541974, at *4 n.3 (S.D.N.Y. June 22, 2010).

The Supreme Court has held that an individual subjected to custodial interrogation by law enforcement personnel "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479. In assessing the validity of a waiver, courts examine the totality of the circumstances surrounding the interrogation. Fare v. Michael

C., 442 U.S. 707, 725 (1979). The totality-of-the-circumstances test applies regardless of the age of the accused. Id.

To determine whether a statement was made voluntarily, the court must first determine whether the statement was the product of coercion on the part of law enforcement. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."). In addition to the conduct of the police and the conditions of interrogation, the court looks to the accused's characteristics, including his experience, background, relative youth, and level of education or intelligence, to determine if his will has been overborne by the actions of the law enforcement officers. Green v. Scully, 850 F.2d 894, 901-02 (2d Cir.) (citations omitted), cert. denied, 488 U.S. 945 (1988).

Officer Dixon, who arrested Petitioner, testified at the Huntley hearing that when he arrived at the scene, Officer Andolina (one of the police officers who had been wounded) was lying on top of Petitioner, pinning him to the ground. According to Officer Dixon, Petitioner appeared "exhausted" and was "breathing hard." Transcript of Huntley Hearing ("Huntley Tr.") at 13, 14. Petitioner did not say anything to him at the time. Petitioner was transported to the police station where, at about 9:45 p.m., Detective Lonergan administered Miranda warnings from a pre-printed card. Petitioner

signed both sides of the card. The interview itself only lasted from 9:45 p.m. until 10:40 p.m., and Petitioner was provided with food and drink.

This Court has reviewed the Huntley transcript and finds that the state courts correctly applied federal law in concluding that Harris' waiver of his Miranda rights and subsequent statement were knowing, voluntary, and intelligent. It is misleading for Petitioner to assert that he was interrogated while in handcuffs, because Detective Lonergan removed the handcuffs before the questioning began. Huntley Tr. at 25. Petitioner's age does not weigh strongly in his favor, as he was eighteen-years-old at the time of the shooting and had reached the age of majority. Under New York law, he no longer was, legally speaking, an infant. See N.Y. CIV. PRAC. LAW & R. § 105(j)). Moreover, Harris cannot claim to have been inexperienced with the law enforcement, given that he was on probation for a violent felony offense at the time he shot the two police officers.

Although Officer Dixon described Petitioner as "exhausted" and "breathing hard" upon his arrest, his condition was not due to sleep deprivation. Rather, looking at the continuum of events, it is apparent that if Petitioner was "exhausted", it was because he had just been involved in a shooting and a physical struggle with one of the wounded police officers. Thus, this is not a case where the police used physical punishment such as the deprivation of food

or sleep, e.g., Reck v. Pate, 367 U.S. 433, 443-44 (1961), to overcome a suspect's resistance. Under the totality of circumstances, the state courts correctly determined that Harris' waiver of rights and ensuring confession were voluntary, knowing, and intelligent, and not marred by improper police conduct.

**D. Ground Four: Illegal Search and Seizure**

Petitioner contends, apparently for the first time in this habeas petition, that he was deprived of his rights under the Fourth Amendment because he was arrested without probable cause by Officer Andolina, one of the shooting victims. This claim appears to be unexhausted since it was never raised in a state court proceeding, but it nevertheless must be deemed exhausted and procedurally defaulted. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). It is, moreover, barred from habeas review, under the doctrine of Stone v. Powell, 428 U.S. 465, 494 (1976).

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. at 494 (footnotes omitted). The Second Circuit has carved out two exceptions wherein federal habeas review might be warranted: (1) "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact

-11-

the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate"). It matters not whether a defendant actually took advantage of the state's corrective procedures, for as the Second Circuit has noted, Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added).

There is nothing to suggest that Harris was precluded from utilizing the state's corrective process due to an unconscionable breakdown in that process. Harris' Fourth Amendment claim accordingly must be dismissed without reaching the merits.

**E.  Ground Five: Ineffective Assistance of Trial Counsel**

Petitioner asserts that he was denied the effective assistance of trial counsel in violation of his Sixth Amendment rights. In particular, Petitioner contends that trial counsel failed to object during the Huntley hearing that Petitioner did not voluntarily waive his Miranda rights; failed to "present meaningful arguments throughout" the court proceedings; failed to "investigate more into his client['s] mental history"; failed to "investigate psychiat[r]ic examiner's report or cross-examine the psychiatric examiner's"; failed to "present character witness"; failed to "have his client test validity of people's case through cross-examination under all circumstances of his client['s] arrest"; failed "to conduct a through [sic] interview with his client and his family"; failed to "properly investigate or raise issue of his client['s] mental state before plea was accepted"; and failed "to explain . . . about waiver of rights that will become lost due to taking plea. . . ." Petition at 18 (Dkt. #1).

Respondent argues that this claim is unexhausted because Petitioner failed to raise it on direct appeal or in a collateral motion to vacate the judgment. Rather than determine the exhaustion and procedural default issues, the Court proceeds to the claim's merits which are easily resolved against Petitioner.

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating

to events occurring prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (citation omitted). To raise a claim of ineffective assistance of counsel related to events that occurred prior to the entry of the guilty plea, Petitioner must show that his attorney's alleged ineffective assistance in those matters pertained to counsel's advice regarding Petitioner's decision whether to plead guilty. Parisi v. United States, 529 F.3d 134, 138–39 (2d Cir. 2008) (citations omitted). Here, however, Petitioner has not demonstrated a link between the errors purportedly committed by counsel prior to the plea and the allegedly involuntary nature of Petitioner's decision to plead guilty. See Cortez v. United States, Nos. 09 CV 7220(DAB), 05 CR 55(DAB), 2011 WL 666245, at *6 (S.D.N.Y. Feb. 10, 2011) ("While the purported ineffectiveness of [§ 2255] Petitioner's counsel regarding the pre-plea issues may have changed Petitioner's strategic bargaining position, Petitioner has not connected the purported ineffectiveness with the knowing and voluntary nature of his decision to plead guilty.") (citing Parisi, 529 F.3d 138–139 ("[C]hallenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, [but] challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does.") (emphasis in original)).

The only alleged error that occurred contemporaneously with the guilty plea and arguably could be said to pertain to the plea's voluntariness is the assertion regarding counsel's failure to explain the nature of the appellate-rights waiver. Even assuming that trial counsel failed to adequately explain what the waiver entailed, Petitioner cannot demonstrate that he was prejudiced. The Appellate Division, on direct appeal, assumed for the sake of argument that the waiver was not valid and, accordingly, considered Petitioner's claims that otherwise would have been foreclosed by a valid waiver. See Swail v. Hunt, 742 F. Supp.2d 352, 364 (W.D.N.Y. 2010) ("Swail cannot demonstrate that he was prejudiced by trial counsel's failure to preserve the insufficiency claim by means of a renewed motion for a trial order of dismissal after the defense case, because the Appellate Division considered the merits of the insufficiency claim, notwithstanding the lack of preservation.").

**IV. Conclusion**

For the reasons stated above, Varner Harris, Jr.'s request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition (Dkt #1) is dismissed. Because Harris has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from

this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                      S/Michael A. Telesca

                              _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

Dated:    Rochester, New York
            September 12, 2012